Matter of Herting v Town of Palatine Assessor (2025 NY Slip Op 25023)

[*1]

Matter of Herting v Town of Palatine Assessor

2025 NY Slip Op 25023

Decided on January 27, 2025

Supreme Court, Montgomery County

Slezak, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 27, 2025
Supreme Court, Montgomery County

In the Matter of the Application of Nicholas Herting and PALATINE CASWELL SOLAR, LLC, Petitioners,

against
Town of Palatine Assessor, TOWN OF PALATINE BOARD OF 
 ASSESSMENT REVIEW and the TOWN OF PALATINE, MONTGOMERY COUNTY, NEW YORK, Respondents.

Index No. EF2023-455

Petitioners Nicholas Herting and Palatine Caswell Solar, LLC, by and through their attorneys of record, Barclay Damon, LLP, by Daniel R. Coleman, Esq.
Respondents Town of Palatine Assessor, Town of Palatine Board of Assessment Review and the Town of Palatine, Montgomery County, New York, by and through their attorneys of record, Dunn & Dunn, PLLC by Gregory T. Dunn, Esq.

Rebecca A. Slezak, J.

On July 19, 2023, Petitioners, Nicholas Herting, and Palatine Caswell Solar, LLC, by and through their attorneys of record, Barclay Damon, LLP, filed a Petition seeking a reduction in the assessed valuation of the property located at 206 Caswell Rd, SBL No. 64-1-40-2.1 (hereinafter "the Property"). On July 11, 2024 Petitioners, by and through their attorneys, Barclay Damon, LLP, by Daniel R. Coleman, Esq., filed a Motion pursuant to Civil Practice Law and Rules (hereinafter "CPLR") § 3212, Real Property Tax Law (hereinafter "RPTL") § 487, and RPTL § 575-b, seeking the following relief: (1) finding as a matter of fact and law that the subject Property qualifies for an RPTL § 487 exemption for the 2023-24 tax year; (2) finding as a matter of fact and law that the subject Property's 2023 assessment should be determined using the discount cash flow (hereinafter "DCF") valuation model mandated by RPTL § 575-b; (3) Directing Respondents to correct their 2023 assessment rolls by (a) reclassifying the subject Property as "solar exempt — 4950" pursuant to RPTL § 487; (b) reducing the 2023 assessment of the Property to $910,675, consistent with the DCF valuation model mandated by RPTL § 575-B [*2]and accepting the Town of Palatine's $30,000 assessment of the subject Property's land; and (d) exempting $88,675 of the Property's 2023 reduced assessment from Town and School District taxes which constitutes the subject Property's "increase in value by reason of the inclusion of [a] solar . . . energy system" pursuant to RPTL § 487(2); (4) directing Respondents to apply the RPTL § 487 exemption to the subject Property's annual assessments for purposes of the Town and School District property taxes for the remaining 14 years of the exemption period, so long as the Property continues to qualify for the exemption under the terms of RPT: § 487; (5) directing Respondents to determine the subject Property's annual assessments using the mandatory RPTL § 575-b DCF valuation formula, so long as there continues to be a "solar energy system" as defined by the RPTL, on the subject Property; and (6) together with such other and further relief as the Court deems just and proper.
In support of the Motion, Petitioners filed a Notice of Motion by Attorney Coleman, dated July 11, 2024; Attorney Affirmation of Attorney Coleman, dated July 8, 2024, with Exhibits 1 through 18; Affidavit of Christopher Clark, Chief Development Officer, Nexamp, Inc., and Senior Vice President, Palatine Caswell Solar, LLC, dated July 8, 2024; and Memorandum of Law by Attorney Coleman, dated July 8, 2024.
Respondents, by and through their attorneys of record, Dunn & Dunn, PLLC, by Gregory T. Dunn, Esq., filed a document entitled Response to Statement of Material Facts, by Attorney Dunn, dated August 19, 2024, with Exhibits A through G, including Affidavit of Leigh Anne Loucks, Sole Assessor for the Town of Palatine, New York, dated August 16, 2024.
Oral argument was held on the motion on August 20, 2024. In reply, on September 16, 2024, Petitioners filed the Reply Affirmation of Attorney Coleman, dated September 16, 2024, with Exhibits 19 and 20.
FACTUAL AND PROCEDURAL BACKGROUND
Petitioners argue that the Property qualifies for an exemption pursuant to RPTL § 487 (2), and further argue that the solar energy project should be assessed using the discount cash flow valuation model mandated by RPTL § 575-b. Petitioner Herting owns land upon which a solar energy system was constructed by Petitioner Caswell. Construction of the solar energy system began in September 2021 and was completed on December 1, 2022. As of March 1, 2023, the solar energy system was not connected to the electric grid, and as far as the Court was advised, was yet to be connected at the time the oral argument was heard for the pending motion. Petitioner Palatine Caswell's predecessor, Nexamp Solar, entered into an interconnection agreement with Niagara Mohawk Power Corporation d/b/a National Grid (hereinafter "National Grid") on September 24, 2019 (hereinafter "the Interconnection Agreement"). The Interconnection Agreement was thereafter assigned to Petitioner Palatine Caswell. On February 26, 2020, Petitioner Palatine Caswell provided the Town of Palatine (hereinafter "the Town") with written notice of its entry into the Interconnection Agreement. Petitioner Palatine Caswell also filed an RP-487 Application with the Assessor of the Town on February 23, 2023.
In May 2023, the Town issued the 2023 tentative assessment roll which classified the Property as non-exempt and assessed the Property at $1,341,000.00. Petitioners subsequently filed an RP-524 grievance complaint on May 19, 2023 with the Town Assessor. The Grievance complaint alleges the Town improperly classified the Property as non-exempt pursuant to RPTL § 487 and improperly overvalued the Property pursuant to RPTL § 575-b discounted cash flow valuation model mandated for solar energy facilities. The assessment and non-exempt classification were not changed and the Town published its final assessment rolls in July 2023.
The Town's Local Law Number 4 was filed with the Department of State December 2018. It notifies the public of the Town's intent to enter into a payment in lieu of taxes (PILOT) program schedule for commercial solar facilities.

LEGAL AUTHORITY
On a motion for summary judgment, the movant bears the initial burden of setting forth evidentiary facts sufficient to entitle that party to judgment as a matter of law (Zuckerman v. City of New York, 49 NY2d 557, 562 [1980]). If the moving party meets this burden, the opposing party must then produce "evidentiary proof in admissible form" to show that a question of fact exists requiring a determination by a trier of fact (id.). When determining a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (Vega v. Restani, 18 NY3d 499, 503 [2012]).
Section 575-b of the RPTL states that "[t]he assessed value for solar or wind energy systems, as defined in section four hundred eighty-seven of this chapter, shall be determined by a discount cash flow approach . . . " (RPTL § 575-b[1]). Section § 575-b of the RTL specifies that the "provisions of this section shall only apply to solar or wind energy systems with a nameplate capacity equal to or greater than one megawatt" (id. at [c][3]).
Section 487 (1) (b) of the RPTL states that a "'[s]olar or wind energy system' means an arrangement or combination of solar or wind energy equipment designed to provide heating, cooling, hot water, or mechanical, chemical, or electrical energy by the collection of solar or wind energy and its conversion, storage, protection and distribution" (RPTL § 487 [1][b]).
Section § 487 (2) of the RPTL provides as follows:
Real property which includes a solar or wind energy system, farm waste energy system, micro-hydroelectric energy system, fuel cell electric generating system, micro-combined heat and power generating equipment system, electric energy storage equipment and electric energy storage system, or fuel-flexible linear generator electric generating system approved in accordance with the provisions of this section shall be exempt from taxation to the extent of any increase in the value thereof by reason of the inclusion of such solar or wind energy system, farm waste energy system, micro-hydroelectric energy system, fuel cell electric generating system, micro-combined heat and power generating equipment system, electric energy storage equipment and electric energy storage system, or fuel-flexible linear generator electronic generating system for a period of fifteen years. When a solar or wind energy system or components thereof, farm waste energy system, micro-hydroelectric energy system, fuel cell electric generating system, micro-combined heat and power generating equipment system, electric energy storage equipment and electric energy storage system, or fuel-flexible linear generator electronic generating system also serve as part of the building structure, the increase in value which shall be exempt from taxation shall be equal to the assessed value attributable to such system or components multiplied by the ratio of the incremental cost of such system or components to the total cost of such system or components. The exemption provided by this section is inapplicable to any structure that satisfies the requirements for exemption under section four hundred eighty-three-e of this title.
(RPTL § 487 [2]). The section continues, by providing that "[t]he president of the authority shall provide definitions and guidelines for the eligibility for exemption of the solar and wind energy equipment and systems . . . " (id. at [3]). Additionally, "[n]o solar or wind energy system . . . [*3]shall be entitled to any exemption from taxation under this section unless such system meets the guidelines set by the president of the authority and all other applicable provisions of law" (id. at [4]). The exemption
shall be granted only upon application by the owner of the real property on a form prescribed and made available by the commissioner in cooperation with the authority. The applicant shall furnish such information as the commissioner shall require. The application shall be filed with the assessor of the appropriate county, city, town or village on or before the taxable status date of such county, city, town or village. A copy of such application shall be filed with the authority
(id. at [6]). It is only "[i]f the assessor is satisfied that the applicant is entitled to an exemption pursuant to this section," that the taxable value shall be entered, with an exemption amount separately computed (id. at [7]).
RPTL § 487 (9) (a) states as follows:
A county, city, town, village or school district, except a school district under article fifty-two of the education law, that has not acted to remove the exemption under this section may require the owner of a property which includes a solar or wind energy system which meets the requirements of subdivision four of this section, to enter into a contract for payments in lieu of taxes. Such contract may require annual payments in an amount not to exceed the amounts which would otherwise be payable but for the exemption under this section. If the owner or developer of such a system provides written notification to a taxing jurisdiction of its intent to construct such a system, then in order to require the owner or developer of such system to enter into a contract for payments in lieu of taxes, such taxing jurisdiction must notify such owner or developer in writing of its intent to require a contract for payments in lieu of taxes within sixty days of receiving the written notification. Written notification to a taxing jurisdiction for this purpose shall include a hard copy letter sent to the highest-ranking official of the taxing jurisdiction. Such letter shall explicitly reference subdivision nine of section four hundred eighty-seven of the real property tax law, and clearly state that, unless the taxing jurisdiction responds within sixty days in writing with its intent to require a contract for payments in lieu of taxes, such project shall not be obligated to make such payments.
(RPTL § 487 [9] [a]). However, RPTL § 487 (9) (b) states,
Notwithstanding paragraph (a) of this subdivision, should a taxing jurisdiction adopt a law or resolution at any time within or prior to the sixty day window, indicating the taxing jurisdiction's ongoing intent to require a contract for payments in lieu of taxes for such systems, such law or resolution shall be considered notification to owners or developers and no further action is required on the part of the taxing jurisdiction, provided that such law or resolution remains in effect through the end of the sixty day notification period.
(RPTL § 487 [9] [b]).
The Petition is brought under RPTL § 300 claiming that the Property was selectively assessed. Section § 300 of the RPTL states that "[a]ll real property within the state shall be subject to real property taxation, special ad valorem levies and special assessments unless [*4]exempt therefrom by law" (RPTL § 300). Pursuant to RPTL § 706, the Court has jurisdiction to review an assessment that is claimed to be excessive, unequal, or unlawful, or where a it is alleged that a property is misclassified (RPTL § 706). Additionally, "[i]f the court determines that the assessment being reviewed is excessive or unequal, it shall order a revised assessment of the real property of the petitioner or the correction of the assessment upon the roll, in whole or in part, in such manner as shall be in accordance with law [ . . . ]" (id. at § 720 [b]).

 ANALYSIS
1. Exemption
Petitioner argues that the Property was valued incorrectly because the Property's assessed value was not calculated pursuant to the DCF valuation formula specified in RPTL § 575-b and because the Property is subject to an exemption for the solar energy system pursuant to RPTL § 487 (2). The Town argues that the Property is not entitled to the exemption pursuant to RPTL § 487 (2) because the solar energy system is not interconnected to the grid. Additionally, the Town argues the Property should not be valued under the DCF valuation formula because the solar energy system does not produce at least one megawatt of energy due to it not being connected to the grid. The Town is of the opinion that the property is properly assessed based on the full value (equalization rate) used for real property within the Town and pursuant to the Town's PILOT program it is entitled to receive payments in lieu of taxes versus an exemption.
After reviewing all the pleadings and hearing oral arguments, the Court finds that the Property is entitled to the DCF valuation model pursuant to RPTL § 575-b and the Town is entitled to receive payments in lieu of taxes pursuant to its PILOT program outlined in Local Law Number 4. The Court makes this determination based on the clear language of the statute and the fact that regulators have yet to provide any guidance to municipalities or solar farm operators to the contrary. The basis for this determination is outlined below.
The instructions for form RP-487 (hereinafter "the Instructions") states:
Real Property Tax Law section 487 exempts from taxation, but not special ad valorem levies or special assessments, real property which includes the following when satisfying guidelines established by the NYSERDA:
•Solar or wind energy system
•Farm waste energy system
•Micro-hydroelectric energy system
. . .
A solar or wind energy system or farm waste energy system must be constructed before July 1, 1988, or after January 1, 1991, and before January 1, 2025.
(Exhibit 13 to Coleman Affirmation).
The notice of Interconnection Agreement, dated February 26, 2020, sent by Petitioners to the Town, indicates that "[t]he Facility has been awarded a NYSERDA incentive under the NY-Sun MW Block Incentive Program and has paid 25% of the interconnection upgrade costs required by National Grid" (see Exhibit 9 to Coleman Affirmation). Although not provided with [*5]the pleadings, the NY-Sun Upstate + Long Island Program Manual is available on the New York State Energy Research and Development Authority (hereinafter "NYSERDA") website and, as such, the Court takes judicial notice of same pursuant to CPLR § 4511 and its interpreting caselaw (hereinafter "the NY-Sun Manual") (see Ronald Benderson v. Erie County Medical, 75 Misc 3d 502, n.1, 2021 NY Slip Op 21133, [Erie Co 2021]. The NY-Sun Manual states that NYSERDA "provides financial incentives and financing options through the NY-Sun Incentive Program for the installation of new grid-connected solar photovoltaic (solar electric) systems [FN1]
" (NY-Sun Manual at p 5). The NY-Sun Manual provides for quality assurance and compliance and system technical requirements that builders must meet in order to participate in the program (see, generally id.). The NY-Sun Megawatt Block (MW Block) program, according to the NY-Sun Manual, "allocates solar capacity targets to specific regions of the State, breaks those targets into blocks, and assigns incentives per block. . . . Program incentives are not awarded until a project has achieved an approved status" (NY-Sun Manual at p 11). Additionally, "[t]o be eligible for incentives, all solar electric and energy storage systems must be grid-connected, end-use applications." (id. at p 68 [emphasis added]). Furthermore, "[t]he contractor or builder is required to ensure all approved solar electric and energy storage systems have an appropriate interconnection agreement that meets New York State standard interconnection requirements. They must also ensure that all approved systems are installed in compliance with that interconnection agreement" (id. at 68 [emphasis added]). A distinct section is set forth for "Energy Storage Systems" whereby an energy storage system "must be connected to the local electric utility's distribution system and must be operated primarily for shifting renewable energy or for load management, while operating in parallel with the utility grid" (id. at p 70). By distinction, the NY-Sun Manual provides that "Projects interconnected with the utility distribution system, prior to being submitted to the Program, will not be eligible to receive program incentives" (id. at p 9).
The Department of Taxation and Finance Office of Real Property Tax Services document entitled 2024 Solar and Wind Appraisal Model User Guide (hereinafter "Taxation User Guide") "was developed in order to establish a process for which the New York State Department of Taxation and Finance would develop a standard appraisal methodology for solar and wind energy systems with a nameplate capacity equal to or greater than one megawatt (MW)" (Exhibit B to Coleman Reply Affirmation, at p 1 [emphasis added]). The Taxation User Guide specifies that the start date of a plant operation is needed when calculating the tax assessment (id. at p 13). However, it also specifies that "[i]f the project has not yet begun operation, then the user should enter the date construction was completed instead" (id.).
Respondents contend that a solar project is incomplete when it has not been interconnected to the grid based on an answer to a question and answer subpage entitled Q&A Appraisal methodology for solar and wind energy projects, on the New York State Department of Taxation and Finance website (see Exhibit B to Attorney Dunn's Affirmation). On this page, the question is posed as "Can assessors use the methodology for projects under construction?" and the Answer is "No. The law requires the methodology to be used to value projects that generate at least one megawatt or more of electricity. Incomplete projects that do not generate [*6]electricity are outside the scope of the law" (Q&A: Appraisal Methodology for Solar and Wind Energy Projects, G7, https://tax.ny.gov/research/property/renewable-qa.htmm last accessed Jan 24, 2025). However, further on the same web page, a question is asked "How is the date of operation defined?" to which the answer is "The date of operation is the date operation began or, if operation has not begun, the date construction was completed" (id. at M5).
Importantly, in her Affidavit, Leigh Anne Loucks, the Town of Palatine Assessor, states that the Petitioner "has not been able to connect its solar improvements situate [sic] upon the Premises with the National Grid, and as a result, has not become operational and has not produced any electricity, i.e., at least one megawatt of electricity" (Loucks Affidavit at p 1 ¶ 6). Additionally, she states, "[w]ithout the production of at least one megawatt of electricity, the Palatine Caswell Solar Energy System fall [sic] outside the scope of RPTL 487, for tax exemption and valuation purposes, such that the DCF valuation model set forth in RPTL 575B is inapplicable" (id. at ¶ 7). It is Ms. Loucks' position that "[u]ntil interconnection occurs and the production of electricity begins, the Premises is subject to taxation (without exemption) and valuation (using the appraisal method of valuation) according to New York State Real Property Tax Law . . . " (id. at p 2 ¶ 8).
Essentially, the Town asks the Court to read, in the requirements for a solar system to qualify for an exemption, that it must be interconnected to the grid. The Town also asks the Court to read, in the requirement for the property to qualify for a DCF valuation, that the solar energy system must produce at least one megawatt of energy. However, the rules of construction, which can be used to determine legislative intent if the lawmaking body is unclear, state that "[t]he legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial and forced construction" (NY Stat §§ 91; §94). Additionally, courts are not to provide an intention to a statute that the plain language did not import and a new language cannot be imported to give it a meaning otherwise not found therein (see Pierse v. Zimmerman, 255 AD 708 [2d Dept 1938]; Palmer v. Spaulding, 299 NY 368 [1949] [in the absence of a clear necessity, words should not be read into a statute]).
There is nothing in the Real Property Tax Law, or in the guidelines from NYSERDA or the Taxation Department that would require solar energy projects to be interconnected to the grid, or actually produce energy, before qualifying for the RPTL § 487 (2) exemption, or the discount cash flow valuation pursuant to RPTL § 575-b.
The definition of a solar energy system refers to equipment "designed" to provide electrical energy (RPTL §487 [1] [b]). There is no dispute that the Petitioners' project qualifies for a solar energy system. Section § 487 [2] states that a real property "which includes" such a solar system, "shall be exempt from taxation to the extent of any increase in the value thereof by reason of the inclusion of such solar [ . . . ] system . . . " (id. at [2] [emphasis added]). No such system shall be entitled to the exemption "unless such system meets the guidelines set by the president of the authority and all other applicable provisions of law" (id. at [4]). The exemption is only available to solar energy systems "which are (i) existing or constructed prior to July first, nineteen hundred eighty-eight or (ii) constructed subsequent to January first, nineteen hundred ninety-one and prior to January first, two thousand thirty" (id. at [5] [emphasis added]). The exemption shall be granted upon the application of the owner of the real property on a form prescribed by the Commissioner of Taxation in cooperation with NYSERDA (id. at [6]). Lastly, "[i]f the assessor is satisfied that the applicant is entitled to an exemption pursuant to this [*7]section, he or she shall approve the application and enter the taxable assessed value of the parcel for which an exemption has been granted pursuant to this section on the assessment roll with the taxable property [ . . . ]" (id. at [7] [emphasis added]).
Section § 575-b of the RPTL states that "[t]he assessed value for solar or wind energy systems, as defined in section four hundred eighty-seven of this chapter, shall be determined by a discounted cash flow approach [ . . . ]" (RPTL § 575-b[1]). Additionally, "[t]he provisions of this section shall only apply to solar or wind energy systems with a nameplate capacity equal to or greater than one megawatt" (id. at [c] [3] [emphasis added]).
Interpreting these two sections according to their plain meaning of the language used a solar system must be granted an exemption if (1) the assessor is satisfied that the applicant's real property includes a solar energy system that meets NYSERDA guidelines; (2) the solar system was or is constructed subsequent to January 1, 1991, and before January 1, 2030; and (3) the owner of the property submits the application on a form approved by the Commissioner of Taxation in collaboration with NYSERDA. A system that meets these requirements qualified for the RPTL § 487 (2) exemption. Additionally, as long as the solar energy system has a nameplate capacity of more than one megawatt, the assessed value of such solar energy system shall be determined by a discounted cash flow approach pursuant to RPLT §575-b.
Petitioner, Nicholas Herting, owns the real property upon which the solar panels were constructed. The simple definition of the word "includes" used in RPTL § 487 is "to contain, embrace, or comprise" (Webster's New Universal Unabridged Dictionary [1994] at p 720). No other words are used in the section to elaborate the meaning to refer to any part of the solar energy system having to be interconnected to the grid. The Affidavit of Christopher Clark, Chief Development Officer Nexamp, Inc., and Senior Vice President of Palatine Caswell Solar, LLC, indicates the project was "fully constructed" December 2022 (see Clark Affidavit at p 4 ¶ 11; ¶ 13). For the purpose of taxation, the 2024 Manual from the Department of Taxation and Finance refers to the date that construction is completed as the date that should be inputted into the system for the purpose of obtaining the tax exemption, and not, like Ms. Loucks alleges, the date the system is interconnected or starts producing energy (see Manual at pp 6-7; c.f., Loucks Affidavit). As such, the solar energy project at issue here was constructed subsequent to January 1, 1991, and prior to January 1, 2030.
It is noted that the fact that the project was awarded a NYSERDA incentive is undisputed in the record before the Court. Since the solar energy project in question was awarded a NYSERDA incentive through the NY-Sun MW Block Inventive Program, and because no project receives such an incentive until it is approved, it is axiomatic to find that the solar energy project in question was approved by NYSERDA. 
The Application for the RPTL § 487 tax exemption was submitted by Petitioners on the RP-487 Application form issued by the Department of Taxation and Finance. According to the plain language of RPTL § 487 (2), as long as all other elements listed in the section were met, the tax assessor must apply the exemption.
On these facts alone, Petitioners' solar energy system would qualify for an exemption pursuant to RPTL § 487 (2). However, RPTL § 487 (9) (b) provides that if the Town had a PILOT program at the time the Town received notice of the Petitioners' intention to construct the solar energy project, then PILOT payments must be made (RPTL § 487 [9] [b]).
The Town received the Notice of Intent pursuant to RPTL § 487 (9) (a) by letter dated February 26, 2020 (see Exhibit 9 to Coleman Affirmation). In the Town's opposition to the [*8]pending motion, attorney Dunn annexed a copy of Local Law Number 4, which was filed with the Department of State on December 6, 2018. Local Law Number 4 states that, "It is further the intent of the Town of Palatine not to forgo revenues from taxation, or payment in lieu of taxation, from the development of solar facilities" (see Exhibit G to Attorney D Affirmation). Additionally, Local Law Number 4 states:
The PILOT schedule for the commercial solar facilities shall be consistent with the RPLT 485(b). The exemption in the first year is fifty percent (50%) of the increase in the assessed value attributable to the improvement. The exemption amount then decreases by five percent (5%) in each of the next nine years and such exemption shall be computed with respect to the "exemption base." The exemption base shall be the increase in assessed value as determined in the initial year of such ten-year period. During years eleven through fifteen (11-15), subsequent to the investment, the property shall be taxes at full value
(Id.). Therefore, pursuant to RPTL § 487 (9) (b), the Petitioners are obligated to make PILOT payments and are not entitled to the RPTL § 487 (2) exemption.
2. Assessment
The question remains as to the assessment of the solar energy system. The Petitioners claim that the solar energy system should be assessed pursuant to the DCF valuation formula, while the Town argues that the solar energy system must be assessed at its true value because it does not produce at least one megawatt of energy pursuant to RPTL § 575-b (3). The Town argues that this requirement means the project must be interconnected to the grid and must produce at least one megawatt of energy (see Loucks Affidavit); and the Petitioner argues that this requirement solely refers to the size of the project and not the actual output required before the discount cash flow method of taxation could be applied. This distinction is a question of legal interpretation, therefore, it is one that the Court can answer as matter of law. In other words, the Court must determine if the DCF valuation formula requires interconnection or simply ability to generate.
Mr. Clark stated in his Affidavit that the Property "consists for 42 acres and a 5-megawatt alternating current ("AC") solar-powered electric generating facility" (Clark Affidavit at pp 1-2, ¶ 3). The Interconnection Agreement between Plaintiff and National Grid is entitled "New York State Standardized Contract for Interconnection of New Distributed Generation Units and/or energy storage systems with capacity of 5 MW or less connected in parallel with utility distribution systems" (see Interconnection Agreement annexed as Exhibit 5 to Coleman Affirmation). The Department of Taxation and Finance 2024 Solar and Wind Appraisal Model User Guide annexed to Coleman Reply Affirmation as Exhibit 20 states that the "required user input determines the System Size (also known as nameplate capacity)" (see Taxation User Guide at p 6 [emphasis added]). Additionally, the Taxation User Guide states that "[t]he system size is used to scale unitized values and affects various cost data" and
[p]roject developers have the most accurate system size data for their project. If the user can get an AC system size value from the project developer, and the developer attests to the veracity of the provided information, then the user should use the value provided by the project developer. If the project developer is unwilling to provide this information, the project's permitting documents with the local building inspector will probably list both AC and DC size
(id.). The Taxation User Guide also states that "t]he 2021-2022 Enacted New York State Budget established a process for the New York State Department of Taxation and Finance (the Tax Department) to develop a standard appraisal methodology for solar and wind energy systems with a nameplate capacity equal to or greater than one megawatt (MW) (id. at p 1 [emphasis added]). Further, "[t]he Tax Department, in consultation with the New York State Energy Research and Development Authority (NYSERDA) and the New York State Assessors Association (NYSAA), will annually develop: an appraisal Model using the discounted cash flow approach for solar and wind energy systems, and corresponding discount rates to be applied for valuation purposes" (id.).
The United States Energy Information Administration, the statistical and analytical agency within the United States Department of Energy defines "generator nameplate capacity (installed)" as "The maximum rated output of a generator, prime mover, or other electric power production equipment under specific conditions designated by the manufacturer. Installed generator nameplate capacity is commonly expressed in megawatts (MW) and is usually indicated on a nameplate physically attached to the generator" (Independent Statistics and Analysis U.S. Energy Information Administration, Glossary, generator nameplate capacity, https://www.eia.gov/tools/glossary/), last accessed Jan 24, 2025). The Court may take judicial notice of this definition. Further, Webster's dictionary defines the word "capacity" as "actual or potential ability to perform, yield, or withstand" (Webster's New Universal Unabridged Dictionary [1994], at p. 219 [emphasis added]).
Nothing in RPTL 575-b (3) requires that the solar energy system be connected to the grid before the assessment must be calculated using the discount cash flow formula. The Court is loath to insert a requirement that the system be interconnected to the grid or actually produce at least one megawatt of energy, as the Town would have the Court interpret RPTL 575-b (3), when nothing in the plain language of the statute, or the New York State Department of Taxation guidelines, or the NYSERDA guidelines contains this requirement (see NY rules of construction supra). The Tax User Guide provides that a project developer may attest to the system size when a nameplate is not affixed (see Taxation User Guide at p 6). In this case, Mr. Clark, the Vice President of Palatine Caswell, the developer of the project in question, stated in his sworn affidavit that the nameplate capacity is 5 megawatt. Therefore, the Court finds that this is the size of the solar energy system, and thus, the solar energy system meets the requirement of RPTL 575-b (3) and must be assessed using the DCF valuation model.
The Court finds that no issues of fact exist regarding the nature of the solar energy system installed by Plaintiff. The property owned by the Herting Plaintiff includes a solar energy system that meets NYSERDA guidelines; which was constructed after January 1991 and before January 1, 2030; having a nameplate capacity of 5 megawatts. The application for the tax exemption pursuant to RPTL § 487 (2) was submitted by Plaintiff on a form approved by the Commissioner of Taxation in collaboration with NYSERDA. However, the exemption does not apply pursuant to RPTL § 487 (2) because of the existence of a PILOT program within the Town (see RPTL § 487 [9] [b]). The assessed value for the solar energy system must be determined by a discount cash flow approach pursuant to RPTL § 575-b and in accordance with the guidelines outlined in the Taxation User Guide. Plaintiff is then required to comply with the Town's PILOT program.
Based upon the foregoing, it is
ADJUDGED that the solar energy system existing on Plaintiff's property qualifies as a [*9]solar energy system defined in RPTL § 487 (1) (b); and it is further
ADJUDGED that the solar energy system's assessment value must be determined by a discount cash flow approach pursuant to RPTL § 575-b (3) and in accordance with the guidelines outlined in the Taxation User Guide; and it is further
ADJUDGED that the Town enacted a PILOT program through Local Law Number 4 in 2018, that was still in effect at the time the Petitioners notified the Town of its intent to construct the solar energy system, and sixty days thereafter which results in Plaintiff not being eligible to receive an exemption pursuant to RPTL § 487 (2); and it is further
ADJUDGED that based upon the record before the Court Local Law Number 4 has not been repealed; and it is further
ADJUDGED that the Petitioner must make payments under the PILOT program in accordance with Local Law Number 4; and it is further
ADJUDGED that the RPTL § 487 exemption shall apply to the School District local property taxes and shall comply with the Local Law Number 4 to the extent such law is applicable to said School District; and it is further
ADJUDGED that this decision and order shall commence for the 2023 assessment of the property, which shall be determined to be year one and shall continue through the remaining fourteen (14) years of the statutory period of fifteen (15) years; therefore, it is hereby
ORDERED that Petitioners' motion is partially granted in that the subject Property's 2023 assessment shall be determined using the discount cash flow valuation model mandated by RPTL § 575-b; and it is further
ORDERED that Petitioners' motion is partially denied in that the subject Property is not subject to the RPTL § 487 (2) exemption because of the PILOT program in existence when Petitioners provided the Town notice of intent to construct the solar energy system currently existing on the property; and it is further
ORDERED that a revised assessment of the real property of the Petitioners is hereby ordered, that is consistent with RPTL §§ 575-b (3), 478 (9) (b), and Local Law Number 4; and it is further
ORDERED that the revised assessment of the real property of the Petitioners shall be and hereby is effective as of the 2023 assessment and shall remain in effect consistent with and pursuant to the term of RPTL § 487 (2); and it is further
ORDERED that the revised assessment shall be applicable to the School District and any other taxing authority that relies upon the Town of Palatine assessment rolls.
This Decision and Order shall constitute the Order of the Court.
PLEASE TAKE NOTICE that the Court is hereby uploading the original Decision and Order to the New York State Courts Electronic Filing system for filing and entry by the County Clerk. Counsel for Petitioners is still responsible for serving notice of entry of this Decision and Order in accordance with the requirements of CPLR §2220 and the Local Protocols for Electronic Filing for Montgomery County.
DATED: January 27, 2025
ENTER
HON. REBECCA A. SLEZAK
Justice of the Supreme Court

Footnotes

Footnote 1: Although this refers to systems on Long Island, the Manual is specifically applicable to Long Island and Upstate New York.